IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JAN ROBERT ANDERSON, JR.,
      Petitioner,

v.                               Case No.:  5:03cv162/MMP/EMT

JAMES CROSBY,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1, Petition).  Respondent filed an answer (Doc. 12).  Petitioner filed a traverse (Doc. 16).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The background and procedural history of this case is undisputed.  On February 15, 1999, pursuant to a written plea agreement, Petitioner pleaded nolo contendere in the Circuit Court in and for Washington County, Florida, to five counts of armed robbery with a deadly weapon in exchange for a sentence of 15.6 years of incarceration followed by concurrent terms of five years of probation (Doc. 12, Ex. A1 at 67-68).  The same day, he was convicted and sentenced to concurrent terms of 15.6 years of incarceration, with credit for 437 days of jail time, followed by concurrent terms of five years of probation (*id.* at 73-91).  Petitioner appealed his convictions and sentences to the

Florida First District Court of Appeal (Doc. 12, Exs. A2, A3, A4, A5).  On February 22, 2000, the First DCA affirmed the convictions and sentences per curiam without opinion (Doc. 12, Ex. A6). Anderson v. State, 753 So.2d 91 (Fla. 1st DCA Feb. 22, 2000) (Table).  Petitioner's motion for rehearing was denied April 28, 2000 (Doc. 12, Ex. A8).

On July 26, 2000, Petitioner filed a motion for postconviction relief in the trial court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 12, Ex. B1 at 1-10).  He subsequently filed a motion to amend the post-conviction motion (id. at 105-08).  On October 30, 2001, the state court denied the motion to amend and denied Petitioner's Rule 3.850 motion (Doc. 12, Ex. C1, Supplemental Record at 93-94).[1]  Petitioner appealed the decision to the First DCA.  The First DCA affirmed the decision per curiam without opinion on August 27, 2002, with the mandate issuing October 25, 2002 (Doc. 12, Ex. C2, C5).  Anderson v. State, 829 So.2d 206 (Fla. 1st DCA Aug. 27, 2002) (Table).

Petitioner initiated the instant section 2254 action on May 27, 2003 (Doc. 1, Petition at 1). His petition presents the following grounds for relief:

> Ground one:  Counsel was ineffective for failing to file motion to discharge counsel where trial counsel represented co-defendant who was also a state witness in same action.

> Ground two:  Evidence and confession were obtained pursuant to an unconstitutional search and seizure.

> Ground three:  Ineffective assistance of counsel for failure to conduct any pretrial investigation.

> Ground four: Trial court erred by summarily denying Petitioner's amend/supplement post conviction motion causing a due process issue.

(Doc. 1, Petition at 6-18).  Petitioner filed a motion to amend his habeas petition (Doc. 7).  This court construed the motion as a motion to supplement, as Petitioner did not raise new grounds for relief, rather, he supplemented his argument as to Ground two of his original petition (see Doc. 9). This court granted the motion to supplement and directed Respondent to respond to the arguments raised in Petitioner's supplemental memorandum (id.).

---

[1]Exhibit C1 includes an original record and a supplemental record, which are separately paginated.

Respondent concedes the petition is timely and that Petitioner exhausted his state court remedies (Doc. 12 at 9-10).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
    (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[2]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and --except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  *See* Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the

"contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Id. (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n. 4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2),

determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence."  Section 2254(e)(1); see  Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." (dictum)); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

III.    EXHAUSTION AND DEFAULT

        It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
          (A)  the applicant has exhausted the remedies available in the courts of the State; or
          (B) (i)  there is an absence of available State corrective process; or
              (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); Picard, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  Id. 459 U.S. at 7, 103 S.Ct. at 278 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id., 459 U.S. at 7 and n.3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364, 115 S.Ct. 887.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365-66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id.

Prior to Duncan, the Eleventh Circuit broadly interpreted the "fair presentation" requirement. See, e.g., Watson v. Dugger, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court had failed to follow state law which required proof of all elements of the crime, and argued in federal court that this was a due process violation); Mattox v. Dugger, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position).  However, after Duncan, the Eleventh Circuit has taken a more restrictive approach.  For example, in Zeigler v. Crosby, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror

---

[4]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. O'Sullivan, 526 U.S. at 839-40, 848. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a

claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).   Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower,7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.   Ground one:  Counsel was ineffective for failing to file motion to discharge counsel where trial counsel represented co-defendant who was also a state witness in same action.

Petitioner alleges that his counsel was ineffective for failing to withdraw from representing him due to a conflict of interest (Doc. 1 at 6).  Petitioner states his public defender, John Roberts, represented co-defendant Donna Lunsford during her "pre-trial and subsequent plea bargaining" and, as part of her plea, Lunsford agreed to testify against Petitioner (*id*.).  Petitioner states he was not aware that Defender Roberts had represented Ms. Lunsford (*id*.).  Petitioner alleges Defender Roberts' representation of him was adversely affected by Roberts' representation of Lunsford because Roberts failed to cross-examine Lunsford when she testified against Petitioner at a hearing to suppress Petitioner's confession on the ground that he was intoxicated at the time of the confession (*id*. at 6-7).  Petitioner contends there is a reasonable probability that if Defender Roberts

had questioned Ms. Lunsford, he would have elicited testimony that she and Petitioner had consumed $1,000.00 worth of crack cocaine less than twenty-four hours prior to their arrests, and the trial court would have granted the motion to suppress based upon this testimony (Doc. 16 at 4).

       1.      Clearly Established Supreme Court Law

In <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court considered a claim of ineffective assistance of counsel in a case where defense counsel represented three co-defendants without objection.  446 U.S. at 337-38.  The Court held that to establish a constitutional violation, a defendant who did not object at trial must demonstrate "that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348.  The Supreme Court subsequently clarified in <u>Mickens v. Taylor</u>, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), that "the <u>Sullivan</u> standard is not properly understood as requiring inquiry into actual conflict as something separate and apart from adverse effect.  An actual conflict for Sixth Amendment purposes is a conflict of interest that adversely affects counsel's performance."  535 U.S. at 172, n.5.  The <u>Sullivan</u>-mandated inquiry is therefore a one-part inquiry into the "adverse effect" of a conflict of interest.  <u>Hunter v. Secretary, Dept. of Corrections</u>, 395 F.3d 1196, 1200 (11th Cir. 2005) (citing <u>Mickens</u>, 535 U.S. at 167-74).

       2.      Federal Review of State Court Decision

Petitioner raised this claim in his motion to amend his Rule 3.850 motion (*see* Doc. 12, Ex. C1, Supplemental Record at 93-94).  The state court denied Petitioner's motion to amend on the ground that Petitioner failed to raise the claim in his original motion and failed to show cause for his failure to do so (*id.*).  Respondent concedes that Florida law required the trial court to consider the merits of the claim (Doc. 12 at 13).  However, Respondent contends Petitioner is not entitled to relief because he failed to demonstrate that he was prejudiced by Defender Roberts' failure to cross-examine Ms. Lunsford (*id.*).

Two years prior to the trial court decision denying Petitioner's motion to amend, the Florida Supreme Court held that where both the original and amended 3.850 motions were filed within the statutory two-year time limitation, it was error for the trial court not to consider the merits of the new allegations unless the trial court determined that the new allegations were procedurally barred for reasons other than the failure to raise them in the original motion, for example if the new claims

could have been raised on direct appeal.  <u>Gaskin v. State</u>, 737 So.2d 509, 517-18 (Fla. 1999).   In the instant case, it is undisputed that Petitioner filed his original and amended Rule 3.850 motions within the two-year limitations period.   Furthermore, the new claims were not otherwise procedurally barred by state law.   Thus, by failing to consider the merits of the amended claims, the trial court failed to follow state law and instead applied the state procedural rules in an arbitrary and unprecedented fashion.   Thus, this court will review the merits of Petitioner's claim.

The sole issue is whether Petitioner demonstrated that Defender Roberts' performance was adversely affected by his representation of Donna Lunsford.   Petitioner alleges Defender Roberts' performance was adversely affected because if he had cross-examined Lunsford, she would have testified that she and Petitioner had consumed $1,000.00 worth of crack cocaine less than twenty-fours hours prior to their arrests, thereby supporting Petitioner's claim that he was intoxicated at the time of his confession (Doc. 16 at 4).

At the suppression hearing,[5] Petitioner testified that during the two-month period prior to his arrest on December 5, 1997, he and Donna Lunsford smoked crack cocaine nearly every day (Doc. 12, Ex. B1 at  30-32, 69).   He testified that the night before his arrest, he and Lunsford had smoked over $1,000.00 worth, or over two ounces, of cocaine (*id.* at 32).   He stated that when he awoke the next morning, he "snuck off" to the bathroom and smoked a marijuana joint laced with cocaine residue (*id.*).   Additionally, he drank a quart of beer later that evening (*id.* at 33).   He testified he could not recall whether he used marijuana or cocaine the evening of this arrest (*id.*).   Petitioner stated he fell asleep around 11:00 p.m., and the police came to the house shortly after midnight (*id.* at 34).   He recalled that the police summoned him to a room at the rear of the house and told him that he would "make it easier on himself" if he made a statement, and that Ms. Lunsford was going to "tell the whole thing," so Petitioner made a statement (*id.* at 34-35).   Petitioner testified  that he was under the influence of crack cocaine, alcohol, and marijuana at the time he made the statement (*id.* at 35).

---

[5]This hearing was held on February 4, 1999 and was the second suppression hearing in Petitioner's case.  The first suppression hearing, concerning the legality of the search of Donna Lunsford's home, was held on July 14, 1998.

Dr. James Hord, a psychologist whose practice involved dealing with people with chemical additions, testified that he examined Petitioner for approximately three hours at the jail (it was not clear from the testimony how long after Petitioner's arrest the examination occurred) (*id.* at 39-40, 42).   Dr. Hord testified that based upon his discussion with Petitioner, including Petitioner's description that he used cocaine "throughout the day" on the day of his arrest and the day preceding his arrest, as well as Dr. Hord's review of Petitioner's written statement to law enforcement, he was of the opinion that Petitioner "was exhibiting obvious confusion and uncertainty throughout the time frame that encompassed the period of the confession . . ." (*id.* at 43-44).   He further testified that based on Petitioner's description of the amount of cocaine he used prior to his confession, Petitioner's description of using cocaine throughout the day of his arrest and throughout the day prior to his arrest, Petitioner's description of fatigue, and the officers' arrival at the house at 2:30 a.m., the circumstances raised a question of whether Petitioner was able to present himself "in a responsible and reliable manner." (*id.* at 44-45).

On cross-examination, Dr. Hord testified that he did not listen to the tape-recorded version of Petitioner's confession, which was subsequently reduced to writing (*id.* at 46).   Dr. Hord admitted that he could not testify as to whether cocaine was in Petitioner's body at the time of his confession, but that it appeared to him that "this individual [Petitioner] was highly influenced by the cocaine that he described, exhibited the kind of confusion that is typical for people in my experience who are being influenced by chemicals of that nature and that would raise a lot of question in my view that would relate to that question of whether or not he was a reliable witness under those conditions." (*id.* at 48, 57).

The State's first witness was Donna Lunsford, a co-defendant with whom Petitioner resided at the time of the arrest (*id.* at 59-60).   She testified that on the day of the arrest, she did not observe Petitioner ingest cocaine, but she saw him ingest marijuana and beer (*id.* at 60-62).   She admitted that she was familiar with the effects of cocaine on the body, as she had used cocaine in the past (*id.* at 63).   She stated that she and Petitioner had smoked cocaine the night before the arrest (*id.* at 64).   She further testified that on the day of the arrest, Petitioner appeared to understand questions she asked him; he provided answers that made sense in relation to the questions and conversations they had, and he appeared to be in control of his faculties (*id.*).   She testified that she was present when

the officers talked to Petitioner prior to his confession; he talked with them willingly, his answers to questions made sense in relation to the questions asked, and he knew where he was and what he was saying (*id.* at 65).

The State's next witness was Kevin Crews, an investigator with the Chipley Police Department (*id.* at 66). Officer Crews testified that he was one of the law enforcement officers who went to Donna Lunsford's home on December 5, 1997 (*id.* at 66, 68). He testified that he had been trained on detecting persons who were under the influence of alcohol, cocaine, and marijuana (*id.* at 66-67). Officer Crews stated that he had made numerous arrests for driving while under the influence of alcohol and had arrested people who admitted at the time the of arrest that they were under the influence of alcohol (*id.* at 67). He also stated he was presently working in the narcotics unit of the police department and had come into contact with people who admitted that they were "coming down" from cocaine (*id.* at 67-68). Officer Crews testified he was familiar with the physical manifestations displayed by people who were currently high on cocaine or suffering from withdrawal of cocaine (*id.* at 68). He stated that when a person is under the influence of alcohol, the person's speech is slurred, the person's balance is unsteady, and an odor of alcohol is detectable (*id.*). Officer Crews testified that regarding the physical manifestations of a person who had been smoking crack cocaine, the signs are different for different people (*id.*). For example, he had observed some people sweating profusely, and others that appeared very pale (*id.*). He stated that most people exhibited bloodshot or glassy eyes and "talk[ed] out of their head," meaning it was difficult to make sense of what they were saying (*id.* at 68-69). He also stated that the vocal tone and cadence of a person under the influence of cocaine was different than that of a person not under the influence of the drug; some people talked so low that they were not understandable, and some yelled but did not realize  they were doing so (*id.* at 69).

Officer Crews identified two written transcripts of audio-taped statements made by Petitioner at the Lunsford home on the night of the arrest (*id.* at 69-71). Crews testified that he was present when Officer Johnson advised Petitioner of his <u>Miranda</u>[6] rights, and Petitioner verbally waived them (*id.* at 71-72). He stated that based upon his experience and knowledge, Petitioner did not appear

---

[6]<u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

to be under the influence of cocaine, marijuana, or alcohol at the time he gave statements to police (*id.* at 72). Petitioner appeared to be oriented as to where he was and what was happening (*id.*). Petitioner did not exhibit any of the physical characteristics of cocaine or alcohol usage that Crews had described (*id.*). Petitioner did not appear to be in pain or injured in any way (*id.*). Petitioner did not verbally indicate that he was high on cocaine at the time of his statement, or that he could not understand what he was doing (*id.*). Officer Crews testified that Petitioner was coherent, and his answers to officers' questions were logical (*id.* at 73). Petitioner did not have difficulty hearing or speaking, and there was no problem with the cadence of Petitioner's speech (*id.*).

The State's final witness was Andrew Johnson, an investigator with the Washington County Sheriff's Department (*id.* at 75). Like Officer Crews, Johnson testified that he had received training on how to detect whether a person was under the influence of alcohol or drugs, such as cocaine and marijuana (*id.* at 75-76). He testified that during his experience as a law enforcement officer he has observed people who were under the influence of alcohol, people who admitted they were under the influence of cocaine and marijuana, and people who admitted they had been smoking cocaine and were "coming down" from the high of cocaine (*id.* at 76).

Officer Johnson stated he was present when officers executed a search warrant on December 5, 1997, at the Lunsford home, as well as when statements were taken from Lunsford and Petitioner (*id.* at 77). Officer Johnson testified that he advised Petitioner of his <u>Miranda</u> rights, including that he had the right to remain silent (*id.*). Johnson stated that Petitioner did not exhibit any signs that he was under the influence of cocaine, marijuana, or alcohol to the extent he could not understand his rights (*id.* at 78). Johnson further stated that he could understand Petitioner's speech (*id.* at 79). Petitioner appeared to hear and understand questions asked by the officers, and Petitioner's answers to such questions appeared to be logical in relation to the questions (*id.*). Petitioner appeared to know where he was and what he was doing (*id.*). Petitioner was alert and coherent and spoke in a normal tone (*id.* at 79-80). Johnson testified that on two occasions during the interview, Petitioner requested that the interview stop, and officers stopped the interview (*id.* at 80-81). Petitioner then willingly continued the interview (*id.* at 81).

Although Petitioner has asserted that Defender Roberts represented Petitioner and Donna Lunsford in the same action, Petitioner has failed to show that Roberts' performance was adversely

affected by the dual representation.  Petitioner contends Defender Roberts could have asked Donna Lunsford whether she and Petitioner had smoked $1,000.00 worth of crack cocaine in the twenty-four-hour period prior to their arrest.  However, Petitioner has provided no factual support for his assertion that Ms. Lunsford would have affirmed that the amount of cocaine they smoked was $1,000.00 worth.  Additionally, Petitioner has failed to allege facts showing that defense counsel's failure to question Ms. Lunsford was linked to counsel's representation of her.  The record shows that Defender Roberts did not cross-examine any of the State's witnesses at the suppression hearing (*see id.* at 65, 74, 83).  Furthermore, Petitioner's public defender not only questioned Ms. Lunsford during Petitioner's first suppression hearing, but defense counsel called Ms. Lunsford as a witness for the defense at that hearing (*see* Doc. 12, Ex. A1 at 110, 150-54), and Petitioner has provided no facts suggesting a reason for a change in loyalty at the time of the second suppression hearing.  Moreover, when Ms. Lunsford testified at the suppression hearing in question (the second suppression hearing), she corroborated Petitioner's testimony that the two of them had smoked cocaine the night before the arrest, and that Petitioner had smoked marijuana and drank beer on the day of the arrest (Doc. 12, Ex. B1 at 61-62, 64).  In light of this favorable testimony, as well as the fact that Petitioner's assertion as to the substance of Lunsford's testimony is purely speculative, it was reasonable for counsel to forego an attempt to elicit specific details from Ms. Lunsford.  In sum, Petitioner has failed to show that his counsel's performance was adversely affected by his representation of Donna Lunsford; therefore, Petitioner is not entitled to federal habeas relief.

   B.   Ground two:  Evidence and confession were obtained pursuant to an unconstitutional search and seizure.

   Petitioner claims the trial court erred in denying his motion to suppress evidence obtained during the execution of the search warrant on Donna Lunsford's home on the ground that law enforcement entered the home illegally (Doc. 1 at 10).  Petitioner contends law enforcement violated state and federal "knock and announce" laws, specifically, Florida Statutes section 933.09 and 18 U.S.C. § 3109 (*id.* at 10-11).  Additionally, in his supplemental argument Petitioner cites Fourth Amendment law in support of his claim (*see* Doc. 7).

   To the extent Petitioner's claim is based upon a violation of Florida's "knock and announce" law, the claim is not cognizable on federal habeas review.  Federal habeas relief is available to

correct only constitutional injury.  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991); Wainwright v. Goode, 464 U.S. 78, 83-84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983).  Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief.  *See* Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved.") (quoting Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983)).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process."  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (citation omitted).

To the extent Petitioner raises a challenge to the officers' entry into the home under 18 U.S.C. § 3109 and the Fourth Amendment, the claim is not subject to federal habeas review.  A state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was or would have been introduced at trial where the State has provided Petitioner an opportunity for full and fair litigation of the Fourth Amendment claim.  Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052-53, 49 L.Ed.2d 1067 (1976).  This rule applies to a conviction based upon a guilty plea, as well as a conviction following a trial.  *See* Stanley v. Wainwright, 604 F.2d 379, 381 (5th Cir. 1979).[7]

Although the Supreme Court has declined to extend Stone to claims under the Fifth and Fourteenth Amendment challenging the voluntariness of confessions made in response to custodial interrogation, *see* Withrow v. Williams, 507 U.S. 680, 688-95, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993), in the instant case, Petitioner does not challenge the voluntariness of his confession on Fifth Amendment grounds.  Although Petitioner's constitutional claim is raised by way of objection to the manner in which police obtained the waiver of his Miranda rights, nevertheless, Petitioner's objection remains premised on the Fourth Amendment, i.e. the waiver was obtained after the officers illegally entered the home.  Such a claim is precluded from federal habeas review by Stone.  *See*

---

[7]Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

Cardwell v. Taylor, 461 U.S. 571, 572-73, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983) (extending rationale of Stone to include custodial statements made after an illegal arrest); *see also* People v. Campbell, 377 F.3d 1208, 1224-26 (11th Cir. 2004) (same) (citing Cardwell); Towne v. Dugger, 899 F.2d 1104, 1106 (11th Cir. 1990) (same); Harris v. Dugger, 874 F.2d 756, 761 (11th Cir. 1989) (same).   Thus, Petitioner's claim is not reviewable if Petitioner was afforded a full and fair opportunity to litigate the Fourth Amendment issue in the Florida courts.

In applying Stone, the Eleventh Circuit has interpreted "full and fair consideration" of a Fourth Amendment claim to include at least one evidentiary hearing in the trial court and the availability of meaningful appellate review when the facts are disputed, and full consideration by an appellate court when the facts are not in dispute.   Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir. 1990).   In the instant case, Petitioner does not allege he did not receive "full and fair consideration" of his Fourth Amendment claim in the state courts.   The record shows that the trial court gave Petitioner a full and fair evidentiary hearing on the Fourth Amendment issue on July 14, 1998 (*see* Doc. 12, Ex. A1 at 110-90).   Petitioner was represented by counsel and given an opportunity to call witnesses material to the officers' entry into the Lunsford home.   The court explicitly found that the officers knocked on the door of the home and announced their presence and purpose, and that sufficient time passed with no response from the occupants for the officers to conclude they were being refused admittance into the home (*id*. at 188).   The trial court additionally found that Petitioner's waiver of his Miranda rights was not causally connected to the forced entry, particularly since one hour passed between the forced entry and the giving of the statements (*id*. at 188-89).   The trial court's analysis was coherent, and the court examined the relevant evidence step by step.        Petitioner challenged the trial court's denial of the motion to suppress on direct appeal, but on other grounds (lack of jurisdiction and failure of trial judge to recuse himself) (*see* Doc. 12, Ex A3).   Additionally, Petitioner failed to preserve his right to challenge the trial court's ruling by pleading nolo contendere without a stipulation from the State that the issue was dispositive of the case.   *See* Brown v. State, 376 So.2d 382, 384-85 (1979); Jackson v. State, 382 So.2d 749, 750 (Fla. 1st DCA 1980) (Brown does not preclude a stipulation by the State and the defendant in which both sides agree that the State has no case and will be unable to proceed with the prosecution if it cannot introduce a confession; under such circumstances, a ruling on the admissibility of the

confession would be dispositive of the appeal).  Petitioner's waiver of his right to seek appellate review on the suppression issue by entering a nolo contendere plea without a stipulation that the issue was dispositive, and his failure to utilize the available channels to properly present his claim to an appellate court (for example, by seeking to set aside his nolo contendere) does not render appellate review unavailable such that Petitioner did not receive "full and fair consideration" of his Fourth Amendment claim.  In light of the trial court's careful consideration and explicit findings on the Fourth Amendment issue, the <u>Stone</u> test for full and fair consideration has been met.

Even if Petitioner's Fourth Amendment claim was subject to review by this court, he is not entitled to relief.  "The Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization, speaking to the manner of searching as well as to the legitimacy of searching at all simply in terms of the right to be 'secure . . . against unreasonable searches and seizures.'"   <u>United States v. Banks</u>, 540 U.S. 31, 35, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003).  The Supreme Court has fleshed out the notion of reasonable execution on a case by case basis, examining the "totality of circumstances" in each case.  *Id.*  While avoiding "categories and protocols" for searches, the Court has, however, pointed out factual considerations of "unusual, albeit not dispositive, significance."  *Id.*  For example, in <u>Richards v. Wisconsin</u>, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the Court held that although the Fourth Amendment standard generally requires the police to announce their intent to search before entering closed premises, the obligation gives way when officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or . . . . would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."

The issue is thus whether the officers' belief that they were constructively refused admittance was reasonable.  In the instant case, the officers had a search warrant based on evidence that one day after a burglary at the Washington County Convalescent Center, officers observed a female exit the Lunsford residence and deposit garbage on the roadside (*see* Doc. 12, Ex. A1 at 9-11). Approximately two hours after the garbage was placed on the roadside, officers searched the garbage and discovered items which were known to have been taken from the Convalescent Center, including keys to a filing cabinet, personal checks from residents of the Center, checks made payable

to vendors of the Center, letterhead from the Center, and a notary seal which belonged to an employee of the Center (*id*. at 9-10).  Officers also discovered evidence from an armed robbery at a Subway fast food restaurant (*id*. at 124-25).

Officer Crews, the officer who executed the affidavit in support of the search warrant, was one of the officers who executed the warrant and testified at the suppression hearing.  Officer Crews testified that there had been five armed robberies in the city during a short period of time involving a black male suspect with a knife, and the suspect in each was generally described as having the same height, weight, and hair style (*id*. at 120-22, 126).  Officer Crews testified that although no one had been hurt during the robberies, the perpetrator carried a knife and threatened persons who were present during the robberies (*id*. at 121, 128-29).  Officer Crews testified that the officers arrived at the house at approximately 1:20 a.m. (*id.* at 114).  He described the house as "small," approximately forty-two feet long (*id.* at 123).  He stated there were two doors, including a front door and a door under the carport (*id*. at 130).  He did not recall observing any lights on in the home (*id*. at 115).

Officer Crews testified that he and Officer Sewell were stationed at the door under the carport (*id*. at 130).  Crews stated that at least twice he beat on the door with the side of his fist and yelled, "Police Department search warrant" (*id*. at 130-31).  He stated Officer Sewell did the same at least once (*id*. at 131).  Crews testified that at least thirty seconds to one minute elapsed with no response, therefore, Officer Sewell kicked the door open (*id*.).  He stated that after he and Officer Sewell began knocking, he did not hear any movement or voices (*id*. at 132).  Crews testified that going into the home, he was concerned that the occupants may harm himself or other officers (*id*. at 137). Upon entering the house, Officer Crews observed Donna Lunsford standing in the hallway of the house (*id.* at 116).  Petitioner was located in a bedroom furthest from the front door (*id*.).

Officer Sewell also testified at the suppression hearing.  He testified that Officer Crews first "beat" on the carport door and yelled, "Search warrant; Police Department." (*id.* at 141).  Officer Sewell then beat on the door and yelled, "Sheriff's Department; search warrant." (*id.*).  He stated they waited approximately thirty seconds and then both officers "beat" on the door and announced their presence (*id.*).  Sewell testified Officer Crews reached down and tried the doorknob to determine if the door was locked, and then he (Sewell) did the same (*id.*).  Then Sewell kicked the

door in, and he and Officer Crews entered the home (*id.* at 142).  Sewell testified he believed "plenty of time" had passed for an occupant to get out of bed and open the door, but he observed nothing to indicate the occupants were coming the door (*id.* at 149).  He did not observe any lights go on, and he did not hear anything, including footsteps or voices (*id.* at 149-50).  Officer Sewell testified that from the time they first started knocking to the time they actually kicked the door in was one to one-and-a-half minutes (*id.* at 146).  Upon entering the home, Sewell observed Ms. Lunsford standing in the hallway at the far end of the house (*id.*).

Officer Sewell testified that prior to entering the house he was aware that evidence existed linking Petitioner to the nursing home burglary and possibly the robberies of fast food franchises, and he was aware that there had been five robberies in town that were similar in nature and committed by a black male with a knife (*id.* at 147).  He stated he was aware that Petitioner was a suspect in the robberies and that there was a possibility that knives were in the home (*id.*).  He stated that prior to entering the house, he did not observe anyone inside the house attempting to leave (*id.* at 144).  When asked whether he had any reason to believe any of the occupants of the house were in imminent danger of bodily harm, Sewell responded:

> I knew that Ms. Lunsford had a kid and I did not know if the kid was in the house or not at this time.  And I knew Ms. Lunsford was in there and knew this guy was in there.  I did not know -- you know, I knew, based on the burglaries and robberies, that there was always weapons involved and I didn't know what he might try.

(*id.* at 145).

Donna Lunsford testified that she heard a bang on the door, and that she got up to go to the door, but upon reaching the doorway of the bedroom, the officers broke the door (*id.* at 152).  She testified that when she had gone to bed in her daughter's bedroom earlier that evening, Petitioner was in the livingroom (*id.* at 154).  When she awoke after hearing the knocking, Petitioner was in her (the master) bedroom (*id.*).  She stated she did not know when Petitioner left the livingroom because she was asleep until she heard a knock on the door (*id.* at 154-55).

Petitioner testified he was asleep on the couch in the livingroom at the front of the house when he heard car doors slam (*id.* at 157).  He said he looked out the window and saw officers surrounding the house (*id.*).  Petitioner stated he ran to the back of the house to get Ms. Lunsford

to answer the door (*id.*).  He testified that while he was running to the back of the house, the officers were banging on the door and yelling, "Washington County Sheriff's Department; search warrant." (*id.*).  The officers banged on the door again and yelled, "Washington County death squad." (*id.*).  Petitioner stated he ran into a bedroom, but not the bedroom where Ms. Lunsford was sleeping (*id.* at 157-58).  He testified that when the officers kicked the door in, Ms. Lunsford was coming out of the other bedroom (*id.* at 158).  Petitioner testified approximately twenty to thirty seconds elapsed from the time of the first knock and announcement and the kicking of the door (*id.*).

Richard Kent, a neighbor of Ms. Lunsford, testified his house is located approximately thirty feet from Ms. Lunsford's carport, and his bedroom is the closest room to the carport (*id.* at 166-67).  He stated he was woken by the sound of "beating and banging and hollering" (*id.* at 167).  Mr. Kent first testified that approximately thirty seconds elapsed from the time he was woken by the knocking until he saw the officers enter the home (*id.* at 168).  Upon further questioning regarding the time it took him to get up and look out his window, Mr. Kent estimated that the time that elapsed was forty-five seconds to one minute (*id.* at 168-69).

Based upon this testimony, the trial court found as fact that the officers knocked on the door and announced their presence (*id.* at 188).  The court also found that Mr. Kent's testimony was "particularly" credible because he had no interest in the matter (*id.*).  The court concluded that sufficient time passed for the officers to reasonably conclude that they were being constructively refused entry to the home, thereby justifying a forced entry (*id.*).

Petitioner has failed to demonstrate that the state court decision was contrary to or an unreasonable application of Supreme Court law.  Given the testimony of the officers that before entering the home, they had evidence linking Petitioner to at least two of five robberies in the city; during each of the robberies, the robber threatened people with a knife; there was a woman and possibly a child in the house with Petitioner at the time of execution of the warrant, and the house was small, it was reasonable for the trial court to conclude that the time that elapsed between the announcement and entry was sufficient under the circumstances to satisfy the reasonableness

requirement of the Fourth Amendment.[8]  *See* United States v. Knapp, 1 F.3d 1026, 1031 (10th Cir. 1993) (trial court's determination that agents waited reasonable period of time before forcible entry was not clearly erroneous where officers announced their presence, waited ten to twelve seconds, and heard no noise from inside); United States v. Chavez-Miranda, 306 Fl.3d 973, 981 (9th Cir. 2002) (police were reasonable in inferring constructive refusal where officers were executing a narcotics warrant in the early evening at a small apartment with which they were familiar and knew to be occupied by at least three people; officers had good reason to believe that heroin was being kept in the apartment and information that one of the occupants posed the potential for violence; and officers knocked and announced their purpose, waiting 20 to 30 seconds without a response before forcing entry); United States v. Spriggs, 996 F.2d 320, 322-23 (D.C. Cir. 1993) (police were reasonable in inferring constructive refusal where officers were executing a narcotics warrant at 7:45 a.m. on a weekday, knocked once, announced their presence in tone that was slightly above normal tone of voice, and waited 15 seconds after announcement to forcibly enter).

Even if this court would have decided the Fourth Amendment issue differently than the state trial court, this court is not firmly convinced that the state court decision is "infected by constitutional error," *see* Williams, 529 U.S. at 389, especially in light of the generality of the Fourth Amendment rule, which gives more leeway to courts in reaching outcomes in case by case determinations.  *See also* Bell, 122 S.Ct. at 1850 ( "[A] federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'") (quoting Williams, 529 U.S. at 411); Lockyer, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.").  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

C.      Ground three:  Ineffective assistance of counsel for failure to conduct any pretrial investigation.

---

[8]The Supreme Court has held that the result should be the same under the Fourth Amendment and U.S.C. §3109, permitting an officer to enter by force "if, after notice of his authority and purpose, he is refused admittance." United States v. Ramirez, 523 U.S.65, 72, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998).

Petitioner next claims he received ineffective assistance of counsel because defense counsel failed to investigate Wanda Campbell as a witness at the hearing on Petitioner's motion to suppress his confession on the ground that he was intoxicated at the time of the confession (Doc. 1 at 15). Petitioner alleges Ms. Campbell was his drug counselor and could have reviewed Petitioner's taped confession and testified that Petitioner was under the influence of cocaine, alcohol, and marijuana at the time of his confession (*id.*).   Petitioner contends Ms. Campbell would have been a more credible witness than Dr. Hord, because she was a drug counselor with more knowledge and experience with drug addicts (Doc. 16 at 6).   Petitioner alleges defense counsel "had the name of Ms. Campbell" and was familiar with her, but counsel made no effort to contact her or "track her down" through the use of an investigator (Doc. 1 at 15).   Petitioner contends if counsel had presented Ms. Campbell's testimony at the hearing on the motion to suppress, the trial court would have granted the motion (*id.*).

> 1.      Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687-88.  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S.Ct. 2104, 158 L.Ed.2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ( "Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." (citation omitted)).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, --- F.3d ---, 2006 WL 146604, at *6 (11th Cir. Jan  20, 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing

professional norms." Strickland, 466 U.S. at 688-89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 2006 WL 146604, at *6 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

Moreover, "[c]ounsel will not be deemed unconstitutionally deficient because of tactical decisions." McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir.1984) (citations omitted); Crawford, 311 F.3d at 1312 ("Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with his client.  In this regard, this court will not substitute its judgment for that of trial counsel." (quotation marks, internal alteration, and citation omitted)).  There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy.  Rogers, 13 F.3d at 386; *see also* Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004), *cert. denied*,--- U.S. ----, 125 S.Ct. 1703, 161 L.Ed.2d 531 (2005).   "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence -- which is also constitutionally protected -- and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

"In general, defense counsel renders ineffective assistance when [he] fails to investigate adequately the sole strategy for a defense or to prepare evidence to support that defense." Fortenberry v. Haley, 297 F.3d 1213, 1226 (11th Cir. 2002).  Counsel's duty to investigate "requires that counsel 'conduct a substantial investigation into any of his client's plausible lines of defense.'" *Id.* (citation omitted).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference.  <u>Chandler</u>, 218 F.3d at 1314 n.14 (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512, 1518-19 (11th Cir. 1995) (en banc)).  If the record is not complete regarding counsel's actions, then the courts should presume "that what the particular defense lawyer did at trial-for example, what witnesses he presented or did not present-were acts that some reasonable lawyer might do." *Id.* at 1314-15 n. 15.  "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel."  <u>Waters</u>, 46 F.3d at 1514.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978).

2.      Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (*see* Doc. 12, Ex. C1 at 7).  The state court denied the claim on the ground that the issue of Petitioner's intoxication was "explored and thoroughly exhausted" at the suppression hearing, thereby effectively concluding that Petitioner's counsel did not perform deficiently in failing to further investigate the issue or present different evidence (Doc. 12, Ex. C1, Supplemental Record at 94).

Initially, Petitioner does not allege that Ms. Campbell was available to testify at the suppression hearing.  Furthermore, he has offered nothing but his own speculation as to the substance of her testimony.  Although he asserts that she would have reviewed his confession and testified that he was under the influence of cocaine, alcohol, and marijuana at the time of his confession, he alleges no factual support for this assertion.

Additionally, even if Ms. Campbell would have testified as Petitioner avers, Petitioner has failed to show a reasonable probability that the trial court would have granted the motion to suppress if she had testified.  Petitioner contends Ms. Campbell's testimony would have been more credible than Dr. Hord's because Ms. Campbell was a drug counselor with more knowledge and experience with drug addicts.  However, Dr. Hord testified that he ran a chemical abuse treatment program for thirteen years (Doc. 12, Ex. B1 at 40).  Furthermore, the trial court discounted Dr. Hord's testimony not because of his lack of knowledge and experience with drug addiction, but because his testimony

was based upon Petitioner's exaggeration of the amount of cocaine he used on the day of the arrest (*see* Doc. 12, Ex. A1 at 65).[9]  Therefore, Petitioner failed to show he was prejudiced by counsel's failure to investigate and present Ms. Campbell as a witness.  Accordingly, he is not entitled to federal habeas relief on this claim.

     D.    Ground four:  Trial court erred by summarily denying Petitioner's amend/supplement post conviction motion causing a due process issue.

    As his final claim, Petitioner asserts the trial court erred in summarily denying the claims raised in his amended Rule 3.850 motion (Doc. 1 at 17).  Petitioner contends the state court erred in applying a procedural bar to Petitioner's claim that defense counsel rendered ineffective assistance because he was laboring under a conflict of interest (Ground one in the instant complaint) (*id*.).  Additionally, the state court erred in summarily denying Petitioner's claim that counsel was ineffective for failing to investigate a voluntary intoxication defense to the charges.

    "[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (citing Spradley v. Dugger, 825 F.2d 1566, 168 (11th Cir. 1987)).  Thus, where a petitioner's claim goes to issues unrelated to the cause of the petitioner's detention, that claim does not state a basis for habeas relief.  Spradley, 825 F.2d at 1568 (involving claims as to errors at a hearing on the petitioner's 3.850 motion).[10]

---

    [9]Dr. Hord testified that Petitioner told him he used cocaine "throughout the day" on the day of his arrest (*see* Doc. 12, Ex. B1 at 44).  However, Petitioner testified at the same hearing that his only cocaine consumption on the day of his arrest was smoking a marijuana joint laced with cocaine residue when he awoke that morning (*id*. at 32).

    [10]Other circuits agree. *See, e.g.*, Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir.) (denying certificate of appealability on petitioner's claim that he was denied due process when state post-conviction court adopted state's proposed findings and conclusions three hours after they were filed with court, noting that a claim alleging errors in a state post-conviction proceeding does not entitle a petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself), *cert. denied*, 527 U.S. 1056, 120 S.Ct. 22, 144 L.Ed.2d 825 (1999); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997) (noting established law that "errors concerning [the state post-conviction] process are not cognizable in federal habeas proceedings"), *cert. denied*, 525 U.S. 903, 119 S.Ct. 237, 142 L.Ed.2d 195 (1998); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993) (holding that petitioner's challenge to state "post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings"); Bryant v. Maryland, 848 F.2d 492 (4th Cir. 1988) (following courts that have determined "claims of error occurring in a state post-conviction

In other words, regardless of how the state court ruled upon the issue, whether or not Petitioner is entitled to federal habeas corpus relief depends on the issue itself.  In the instant case, Petitioner raised the conflict of interest issue as Ground one in the instant petition, and this court reviewed that claim (*see supra* Ground one).  Petitioner also raised defense counsel's failure to investigate Petitioner's intoxication at the time he confessed to police as Ground three in this action, and this court reviewed that claim as well (*see supra* Ground three). Petitioner did not raise in the instant petition the issue of defense counsel's failure to investigate Petitioner's intoxication at the time he committed the crimes as a defense to the crimes charged; therefore, that issue is not reviewable by this court.  Therefore, Petitioner's Ground four does not state a separate claim cognizable in this federal action.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**, and the clerk be directed to close the file.


At Pensacola this 31<u>st</u> day of January 2006.



/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**




**<u>NOTICE TO THE PARTIES</u>**


**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate**

---

proceeding cannot serve as a basis for federal habeas corpus relief"); <u>Kirby v. Dutton</u>, 794 F.2d 245, 247 (6th Cir. 1986) (holding that § 2254 was not available to challenge "a denial of the sixth amendment right to effective assistance of counsel, a denial of due process, and a denial of equal protection in the State post-conviction proceedings--claims unrelated to his detention").

review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).